UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRYL WATSON,

        Plaintiff,                               Hon. Janet T. Neff

v.                                                  Case No. 1:13-CV-327

UNKNOWN WAKEFIELD, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #15). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

        The following allegations are contained in Plaintiff's complaint. (Dkt. #1). In March 2011, corrections officer Wade Wakefield "improperly confiscated" Plaintiff's musical amplifier. Plaintiff submitted a grievance regarding the matter and in August 2011, Deputy Warden James Verboncouer ordered that the amplifier be returned to Plaintiff. The "very same week" that Plaintiff's amplifier was returned, Wakefield "stopped paying" Plaintiff for work performed as a "unit tutor." Specifically, between the dates of August 10, 2011, and September 17, 2011, Plaintiff worked a total of nine days for which he was not paid.

When Plaintiff asked about this matter, Wakefield responded, "that will teach you to go over my head when I do something." Plaintiff filed a grievance against Wakefield regarding the issue of his withheld pay. Corrections officials Jeanine Winger and Kevin Brege "negotiated a resolution" to Plaintiff's grievance and ordered that Plaintiff be paid for the nine days in question. Brege informed Plaintiff that "even though [he] had won that round," Wakefield "was pissed" and spoke with Classification Director, Mario Vialpando, in an effort to have Plaintiff's pay rate reduced. Plaintiff's pay rate was subsequently reduced based upon "false statements" by Wakefield, Winger, and Vialpando.

On January 17, 2012, Brege issued a "false work report" regarding Plaintiff's work performance and, moreover, requested that Plaintiff be terminated from his position. Plaintiff filed a grievance concerning the matter. On January 25, 2012, Plaintiff was transferred to a different correctional facility.

Plaintiff initiated the present action on March 27, 2013, against Wakefield, Vialpando, Verboncouer, Winger, and Brege alleging various claims of unlawful retaliation. Specifically, Plaintiff alleges that Defendant Wakefield withheld his wages as retaliation for Plaintiff going "over his head" to recover his amplifier. Plaintiff alleges that Wakefield subsequently engaged in "harassment and other forms of retaliation as punishment" for Plaintiff challenging his conduct. Plaintiff alleges that Winger, Brege, Vialpando, and Verboncouer "impeded, stalled and tried to frustrate" Plaintiff from exercising his right to file prison grievances. Finally, Plaintiff alleges that he was transferred in retaliation for filing prison grievances. Defendants move for relief on several grounds.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### **QUALIFIED IMMUNITY STANDARD**

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 555 U.S. at 232. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to

qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard articulated above. Thus, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights). Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both

point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher*, 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 555 U.S. at 236. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

## ANALYSIS

### I.      Exhaustion

Defendants contend that certain of Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. Specifically, Defendants argue that Plaintiff has failed to properly

exhaust any of his claims against Defendant Verboncouer as well as his claims regarding his allegedly retaliatory transfer. The Court, however, need not resolve the exhaustion question because the claims in question must be dismissed for a more fundamental reason, such fail to state a claim on which relief may be granted.

Because Plaintiff is proceeding as a pauper, his claims are subject to dismissal if such are frivolous, malicious, or fail to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines that. . .the action or appeal. . .fails to state a claim on which relief may be granted"). To avoid dismissal for failure to state a claim, Plaintiff must allege in his complaint *facts* sufficient to "give the defendant fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must likewise articulate facts sufficient to allege a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the

> wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

      1.      Defendant Verboncouer

While Plaintiff has asserted the conclusion that Deputy Warden Verboncouer subjected him to unlawful retaliation, Plaintiff has failed to allege any facts that would permit him to prevail on such a claim. The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With respect to causation, courts recognize that retaliation is "easy to allege" and "can seldom be demonstrated by direct evidence." *Huff v. Rutter*, 2006 WL 2039983 at *7 (W.D. Mich., July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). Nonetheless, "bare allegations of malice" are insufficient to state a constitutional claim, as Plaintiff must instead establish "that his protected conduct was a motivating factor" behind the allegedly retaliatory action taken. *Thaddeus-X*, 175 F.3d at 399 (citations omitted); *see also*, *Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir., Mar. 12, 2004) ("conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"); *Desmone v. Adams*, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred").

Plaintiff asserts three factual allegations against Defendant Verboncouer. Plaintiff asserts that Verboncouer ordered the return of his amplifier following its confiscation by Defendant Wakefield. (Dkt. #1 at ¶ 13). Such clearly fails to state a claim for retaliation. Plaintiff next alleges that Verboncouer failed to respond to a "complaint" he submitted. (Dkt. #1 at ¶ 27). Such likewise fails to state a claim. *See King v. Zamiara*, 680 F.3d 686, 706 (6th Cir. 2012) (liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior); *Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006) (liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance or failed to act in response thereto). Finally, Plaintiff asserts that the "Deputy Warden," presumably Defendant Verboncouer, approved the decision by Defendant Vialpando to reduce his pay rate. (Dkt. #1 at ¶ 21). Even if the Court assumes that Plaintiff can satisfy the first two elements of the retaliation analysis, Plaintiff has alleged no facts from which a reasonable person could conclude that Verboncouer's actions were in any way motivated by Plaintiff's protected conduct. Accordingly, the Court concludes that Plaintiff's allegations against Defendant Verboncouer fail to state a claim on which relief may be granted. Accordingly, the undersigned recommends that Plaintiff's claims against Verboncoer be dismissed.

2.    Transfer Claim

In his complaint, Plaintiff asserts the conclusion that he was transferred to another prison for unlawful retaliatory purposes. (Dkt. #1 at ¶ 36). Plaintiff fails, however, to allege facts that would entitle him to prevail on this claim. Plaintiff's conclusory allegations are simply insufficient. Moreover, because "prisoners are expected to endure more than the average citizen, and since transfers are common

among prisons, ordinarily a transfer would not deter a person of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). Courts have recognized an exception to this general rule where the transfer "results in a foreseeable negative consequence, such as a significant inhibition of the prisoner's ability to access the courts." *Sango v. Huss*, 2014 WL 2616592 at *7 (W.D. Mich., June 12, 2014) (citing *Siggers-El*, 412 F.3d at 702). Plaintiff alleges no such adverse action. Accordingly, the undersigned recommends that Plaintiff's retaliatory transfer claim be dismissed.

## II.    Defendants Winger, Brege, and Vialpando

Plaintiff alleges that Defendants Winger, Brege, and Vialpando "impeded, stalled and tried to frustrate" him from exercising his right to file prison grievances. Specifically, Plaintiff alleges that Defendant Winger made false statements to justify cutting Plaintiff's rate of pay. (Dkt. #1 at ¶ 24). Plaintiff alleges that Defendant Vialpando improperly reduced Plaintiff's rate of pay and made false statements to support such. (Dkt. #1 at ¶ 23-24). Plaintiff alleges that Defendant Brege authored a false work report concerning Plaintiff's work performance. (Dkt. #1 at ¶ 29). Plaintiff alleges that the conduct in question constituted unlawful retaliation. Defendants Winger, Brege, and Vialpando assert that they are entitled to qualified immunity.

Defendant Vialpando has submitted an affidavit in which he asserts that Plaintiff's rate of pay was not reduced. (Dkt. #16, Exhibit H). Instead, after receiving complaints concerning Plaintiff's performance, an investigation was conducted. (Dkt. #16, Exhibit H). This investigation revealed that Plaintiff often played cards when he claimed to be working and "did not make himself available to provide tutoring." (Dkt. #16, Exhibits I-K, R). Accordingly, the decision was made to pay Plaintiff "on

a prorated basis" for the time he actually worked. (Dkt. #16, Exhibit H). Defendants are entitled to relief because Plaintiff cannot establish the adverse action or causation elements of his claims.

Plaintiff argues that Defendants Winger, Brege, and Vialpando retaliated against him by reducing his rate of pay. The evidence submitted by Defendants, however, reveals that Plaintiff's rate of pay was not reduced. Instead, Defendants made a reasonable, and penologically justified, decision to simply pay Plaintiff for the time he actually worked. To sustain a retaliation claim, the alleged adverse action "must create more than a de minimis injury." *Miller v. Berghuis*, 2014 WL 1909348 at *5 (W.D. Mich., May 13, 2014); *see also*, *Markham v. Mote*, 2013 WL 791240 at *4 (W.D. Mich., Mar. 4, 2013) (same). The Court finds that the decision to discontinue paying Plaintiff for playing cards and otherwise not performing his required duties fails to rise above the level of de minimis injury.

When examining the causation element, the result is the same. On summary judgment, the causation element of a retaliation claim is analyzed under the burden-shifting framework articulated in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977). *See Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007). Accordingly, even if Plaintiff demonstrates that his protected conduct "was a motivating factor in the defendant's action," Defendant is entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity." *Eby*, 481 F.3d at 441-42.

Plaintiff has failed to demonstrate that his protected conduct was in any way related to the alleged actions by Defendants. Plaintiff's affidavit, submitted in opposition to the present motion, is long on conjecture, but deficient with respect to specific allegations regarding causation. Moreover, even if the Court assumes that Plaintiff can satisfy his initial burden, Defendants are nonetheless entitled to relief as they have presented evidence that their actions were completely unrelated to Plaintiff's

protected conduct. As discussed above, Defendants have demonstrated that their actions were motivated by Plaintiff's work performance and the results of their investigation. Accordingly, the undersigned recommends that Defendants Winger, Brege, and Vialpando are entitled to qualified immunity.

### III. Defendant Wakefield

Plaintiff alleges that Defendant Wakefield retaliated against him by: (1) withholding his pay; (2) attempting to get his pay rate reduced; and (3) making false statements to justify reducing his rate of pay. Defendant asserts that he is entitled to qualified immunity. The Court only partly agrees.

With respect to Plaintiff's claims regarding the alleged attempts to reduce his pay, as discussed above, Plaintiff cannot satisfy the adverse action element of the analysis. Accordingly, the Court concludes that Defendant Wakefield is entitled to relief as to such claims. As to Plaintiff's claim, however, that Defendant Wakefield withheld his pay for retaliatory reasons, the Court reaches a different conclusion.

Defendants do not dispute Plaintiff's allegation that he was not paid for nine days work he performed. In fact, Defendants concede that Plaintiff grieved this particular issue after which he was paid for the nine days in question. Withholding an inmate's pay constitutes more than a de minimis injury. Thus, Defendant is not entitled to relief on the adverse action element.

With respect to the causation element, Defendant Wakefield asserts that he "does not have the authority to reduce Plaintiff's pay or work hours." Defendant has presented no evidence, however, to support this assertion. Defendant does not even address the topic in his affidavit. (Dkt. #16, Exhibit G). Defendant does assert in his affidavit that he observed Plaintiff "playing cards while on work duty." (Dkt. #16, Exhibit G). Defendant argues that this statement demonstrates that his actions

were not motivated by Plaintiff's protected conduct. While this statement is relevant to the decision to begin paying Plaintiff for only those hours that he actually worked, the connection between this statement and the decision to not pay Plaintiff for the aforementioned nine days work is not clear. The decision to not pay Plaintiff for the nine days in question was reversed which supports the inference that such was motivated by something other than the observation that Plaintiff was playing cards while on duty as such would appear to have supported revocation of Plaintiff's pay. In sum, Defendant Wakefield has failed to satisfy his burden of demonstrating the absence of a genuine issue of material fact regarding this particular claim. Accordingly, the undersigned recommends that Defendant Wakefield's motion for summary judgment and qualified immunity be denied as to this particular claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #15), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims be dismissed save his claim that Defendant Wakefield withheld his work pay for unlawful retaliatory reasons. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  August 7, 2014           /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge